IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Maros KMEC,

        Plaintiff,

        v.                              Civil No. 1:20-cv-1235

AIRBUS U.S. SPACE & DEFENSE, INC.,

        Defendant.

## COMPLAINT

Plaintiff, Maros Kmec, brings this action under the Federal False Claims Act, 31 U.S.C. § 3730(h), and the common law of the Commonwealth of Virginia against AIRBUS U.S. Space & Defense, Inc. (AIRBUS), to recover all damages, penalties, and other remedies provided thereunder, and for his Complaint alleges:

### I.   Parties

1. Plaintiff Maros Kmec began working at AIRBUS in March, 2015. He was employed at the company's offices, located at 2550 Wasser Terrace, Suite 9000, Herndon, Virginia 20171. Until his departure, Mr. Kmec worked as a Contracts Manager with responsibility for managing a large portfolio of contracts with the Federal Government.

2. Defendant AIRBUS is a foreign-owned for-profit corporation, incorporated in Delaware, but registered with the Commonwealth of Virginia and authorized to

operate a business therein. AIRBUS is a subsidiary of Airbus Group, Inc. (itself a subsidiary of Airbus SE), operating in North America.

## II.   Jurisdiction and Venue

3. Jurisdiction in this Court is proper pursuant to 31 U.S.C. §§ 3732(a), and 3730(h)(2). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1342, and 1367.

4. The Court may exercise personal jurisdiction over the Defendants, and venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391, because the acts proscribed by 31 U.S.C. § 3730(h)(2) and the Virginia common law tort of malicious prosecution and complained of herein took place in part in this District and the Defendant resided or transacted business in this District:

    a. At all times relevant to this Complaint, AIRBUS maintained offices in this District, in Fairfax County.

    b. As described below, AIRBUS committed violations of 31 U.S.C. § 3730(h). These violations occurred in the Eastern District of Virginia, among other locations.

    c. As described below, AIRBUS committed the tort of malicious prosecution in the Eastern District of Virginia.

## III.   Legal Background

### The False Claims Act

5. The False Claims Act provides, in pertinent part:

    **Relief from retaliatory actions.**

    (1) In general. – Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that

employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

(2) Relief. – Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

(3) Limitation on bringing civil action. – A civil action under this subsection may not be brought more than 3 years after the date when the retaliation occurred.

31 U.S.C. § 3730(h).

## IV.    Allegations

### Mr. Kmec Witnessed AIRBUS's Violations of the False Claims Act

6. Mr. Kmec worked for AIRBUS from March 2015 to October 2018. He was employed as a Contracts Manager at the company's office in Herndon, Virginia. During his time at AIRBUS, Mr. Kmec provided contract, administrative, and analytical support for the company when responding to Government solicitation requests. Mr. Kmec also provided support during contract performance in the event of any change proposals or performance issues.

7. By virtue of his position, Mr. Kmec developed concerns regarding AIRBUS's estimating and accounting practices related to its contracts with the Federal Government. During his employment, Mr. Kmec learned that AIRBUS frequently

submitted false and fraudulent claims to the Federal Government under its contracts with several Federal departments.

### The Defendant Retaliated Against Mr. Kmec

8.  When Mr. Kmec brought AIRBUS's misconduct to the attention of its management,  the company marginalized and ignored him. When Mr. Kmec persisted, and AIRBUS managers learned that Mr. Kmec was preserving evidence of their misconduct, AIRBUS undertook to humiliate, distress, and discredit Mr. Kmec, and constructively terminated him from his position in October 2018. Thereafter, AIRBUS made false allegations, and provided false, misleading, and incomplete information to the Federal government to trigger an investigation of Mr. Kmec, for the purpose of damaging his reputation and credibility.

9.  Early on in his work at AIRBUS, Mr. Kmec developed concerns about the company's billing and contracting practices. However, Mr. Kmec did not keep his concerns for AIRBUS's business practices a secret. Instead, he disclosed the fraudulent activity to AIRBUS management on multiple occasions, informing his manager, AIRBUS's Pricing Director, and General Counsel. To his disappointment, the company did nothing to address the wrongdoing, and instead, Mr. Kmec became the target of bullying from his superiors.

10. In September 2018, Mr. Kmec discovered that his supervisor, Gregory Angst, had created a job requisition for Mr. Kmec's existing position. Approximately one week later, Mr. Kmec learned that AIRBUS had launched an investigation targeting him. AIRBUS discovered that Mr. Kmec had preserved emails and

contemporaneous evidence of AIRBUS's fraudulent behavior (by sending this information to his personal email account and storing it on a personal hard drive). During its investigation, AIRBUS found additional emails with evidence incriminating the company, which Mr. Kmec kept in two folders on his work computer in his MS Outlook Agent. Unknown AIRBUS employees then deleted the contents of those folders, as Mr. Kmec later discovered.

11. On October 17, 2018, AIRBUS Information Technology (IT) and security staff accused Mr. Kmec of using his personal drive at work without authorization, and demanded that he turn it over for inspection (under the false pretext that they had detected a virus on it). Mr. Kmec, suspecting that the inquiry was part of a pattern of retaliation and harassment, refused their request, and under duress, he resigned from the company.

12. Defendant's actions, in response to Mr. Kmec's efforts in furtherance of a possible action under the False Claims Act, or to stop AIRBUS's violations of that law, constitute a violation of the anti-retaliation provision of the False Claims Act (31 U.S.C. § 3730(h)), the Defense Contractor Whistleblower Protection Act (10 U.S.C. § 2409), and 41 U.S.C. § 4712.

13. Shortly after October 17, 2018, AIRBUS contacted the Federal Bureau of Investigation (FBI) in this District, and falsely alleged that Mr. Kmec had misappropriated AIRBUS's documents in violation of the Trade Secrets Act, 18 U.S.C. § 1832, and committed other crimes.

14. The false, misleading, and incomplete information which AIRBUS provided to the FBI included, but was not limited to the following:

a.  That Mr. Kmec had impermissibly used a personal hard drive with his work computer (though AIRBUS knew that Mr. Angst and AIRBUS's IT staff had been aware of, and had acquiesced in, Mr. Kmec's use of a personal hard drive since the beginning of his employment, and that the use of such personal drives by AIRBUS employees was common, tolerated, and even encouraged by AIRBUS's managers);

b.  That Mr. Kmec had misappropriated AIRBUS's proprietary documents and data (though AIRBUS knew that the contract documents and data in question were either derived from public documents and datasets, freely available on government websites, or were documents and data that AIRBUS executives had provided to Mr. Kmec, knowing and intending that he would use the tools he had developed for his website to analyze the files for AIRBUS's benefit);

c.  That Mr. Kmec had used AIRBUS's proprietary information to benefit his business, KM-LOGIX, and its website, farclause.com, to AIRBUS's detriment (though AIRBUS executives had known for years of Mr. Kmec's personally-developed analytical tools and website, and Mr. Kmec and other AIRBUS employees and officers had used farclause.com's functions to assist in AIRBUS's own business operations);

d.  That Mr. Kmec was a disgruntled employee who wanted to harm AIRBUS (though AIRBUS knew that Mr. Kmec had only brought AIRBUS's wrongful practices to the attention of AIRBUS in an effort to remedy the

misconduct, and that AIRBUS had unlawfully targeted Mr. Kmec for retaliation, harassment, and discrimination); and

e.   That AIRBUS had conducted a bona fide investigation of Mr. Kmec through which it had discovered his conduct described in the preceding subparagraphs (though in fact, AIRBUS's investigation was intended to ascertain whether Mr. Kmec planned to report AIRBUS's fraudulent practices to the Federal government, and to create a false and misleading record with which AIRBUS could discredit Mr. Kmec if he decided to report the company's wrongdoing).

15. In summary, at the time AIRBUS provided information concerning Mr. Kmec to the FBI, AIRBUS's executives and employees had long known that Mr. Kmec had personally developed a website and tools, which the company itself found useful during and even after Mr. Kmec's employment, and had long known of and acquiesced in the use by Mr. Kmec and others of personal computer storage devices at AIRBUS. Fearing that Mr. Kmec would imminently report AIRBUS's misconduct to the Government, the company ginned up a pretextual investigation of him, forced him to resign, and reported false allegations of his wrongdoing, in an effort to preemptively discredit him and harm his reputation.

16. By virtue of the foregoing, AIRBUS maliciously and without probable cause procured the issuance of search warrants for purported trade secrets and other information it wrongly alleged Mr. Kmec to have taken.

17. Based on AIRBUS's complaint, FBI agents raided Mr. Kmec's residence in January, 2019, seizing his personal drive and laptop. As AIRBUS intended, the execution of the search warrant caused Mr. Kmec distress and humiliation.

18. The FBI has completed its review of AIRBUS's false allegations, returned Mr. Kmec's property to him, and has taken no action against him.

### V.   Causes of Action

### COUNT I – RETALIATION IN VIOLATION OF 31 U.S.C. § 3730(h)

19. Mr. Kmec repeats each and every allegation of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

20. Mr. Kmec undertook lawful acts that were either in furtherance of a possible action under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, or were efforts to stop the Defendants from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*

21. Defendant AIRBUS was aware of Mr. Kmec's efforts described in the preceding paragraph.

22. Defendant AIRBUS retaliated against Mr. Kmec within the meaning of the False Claims Act, 31 U.S.C. § 3730(h)(1).

23. Because of Defendant AIRBUS's actions, Mr. Kmec has been damaged in a substantial amount to be determined at trial.

### COUNT II – MALICIOUS PROSECUTION
### IN VIOLATION OF VIRGINIA COMMON LAW

24. Mr. Kmec repeats each and every allegation of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

25. Defendant AIRBUS set on foot a prosecution of Mr. Kmec, by contacting and providing information to the FBI in this District shortly after October 17, 2018, which resulted in search warrants issued by this Court.

26. Because the information Defendants provided to the FBI was false, misleading, and incomplete, the investigation lacked probable cause.

27. Defendants' actions in connection with initiating, procuring, and cooperating with the FBI's investigation were malicious.

28. The Government's investigation of Mr. Kmec has been terminated in a manner not unfavorable to him.

29. Because of Defendants' actions, Mr. Kmec has been damaged in a substantial amount to be determined at trial.

## VI.    JURY TRIAL DEMAND

30. Plaintiff, Maros Kmec demands a jury trial on all Counts.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Kmec prays that the Court enter judgment against Defendants as follows:

(a) that he be awarded all remedies that the Federal False Claims Act, 31 U.S.C. § 3730(h) provides, including "reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination";

(b) that for the Defendant's malicious prosecution, he be awarded compensatory and punitive damages;

(c)  that attorneys' fees, costs, and expenses that he necessarily incurred in bringing

and pressing this case be awarded; and

(d) that this Court award such other and further relief as it deems proper.

Respectfully submitted,

/s/ Timothy R. Clinton

Timothy R. Clinton (Va. Bar No. 70902)
CLINTON & PEED
777 6th Street NW, 11th Fl.
Washington, DC  20001
(202) 621-1828
(202) 204-6320 (fax)
tim@clintonpeed.com

Benjamin J. Vernia
D.C. Bar No. 441287
Andrew K. Murray
D.C. Bar No. 187281
THE VERNIA LAW FIRM
1455 Pennsylvania Ave., N.W.,
Suite 400
Washington, D.C. 20004
Tel. (202) 349-4053
Fax (866) 572-6728
bvernia@vernialaw.com

COUNSEL FOR PLAINTIFF,
Maros Kmec

Date: October 17, 2020